**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Tracy FELLS, Defendant–Appellant.**

No. 89–5649.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 2, 1990.

Decided Dec. 10, 1990.

Alan Hideto Yamamoto, Fairfax, Va., for defendant-appellant.

Liam O'Grady, Asst. U.S. Atty., Alexandria, Va. (Henry E. Hudson, U.S. Atty., Alexandria, Va.), for plaintiff-appellee.

Before WILKINSON and WILKINS, Circuit Judges, and STAMP, United States District Judge for the Northern District of West Virginia, sitting by designation.

WILKINS, Circuit Judge:

Tracy Fells appeals his conviction and sentence for five counts of distribution of crack cocaine. 21 U.S.C.A. § 841(a)(1)–(2) (West 1981). Fells contends that the district court erred in admitting into evidence the details of conversations between Fells and undercover agents that occurred after he committed the charged offenses. He also argues that the district court improperly increased his offense level by 4 based on his role as an organizer of a criminal activity that involved five or more participants.

I.

During an investigation of illicit drug transactions in the Alexandria, Virginia area, Wendell Ford, a police informant and undercover operative, began an effort to purchase crack cocaine from Fells. On December 20, 1988 Ford dialed Fells' pager number. An associate of Fells', Jeff Richardson, returned the page and arranged to meet Ford at a designated location within sight of Fells' residence. Richardson, accompanied by Fells, met Ford, and after Ford paid Fells $600, Richardson gave him a bag containing one-half ounce of crack cocaine.

On January 5, 1989 Ford again dialed Fells' pager. Fells returned this call, told him to contact Richardson, and gave him Richardson's pager number. Richardson and Ford scheduled another meeting, this time at Richardson's residence. On this occasion Ford observed seven, one-half ounce bags of crack cocaine in Richardson's possession, paid him $600, and received one bag.

On January 11, 1989 Fells contacted Ford and offered to sell him more crack cocaine.

Ford responded that he would be in touch. Later that day Ford dialed Fells' pager number and when Fells returned the call, Ford offered to purchase two and one-half ounces of crack cocaine. Fells responded that Richardson would call him back. When Richardson called, he and Ford agreed to meet at Richardson's residence. Ford paid Richardson $2,800 and received five, one-half ounce bags of crack cocaine. After the transaction was completed, Ford informed Richardson that he intended to bring a friend with him the next time he bought drugs.

During a chance meeting at a local recreational center on January 27, 1989, Fells asked Ford when he would "be ready to get something else." The next day undercover police officer Scott accompanied Ford to a gasoline station near Fells' residence where Ford signaled Fells by dialing Fells' pager number. A few minutes later, Fells, accompanied by Richardson, met Ford and Scott. Fells instructed Richardson on the amount of crack cocaine to sell to Ford and Scott. After Fells left, Richardson delivered two and one-half ounces of crack cocaine to Scott for which Scott paid $2,800.

On February 4, 1989 Ford contacted Fells from the gasoline station to arrange another crack cocaine purchase. Fells instructed Ford to remain at the station with Scott and that he would send Richardson to meet with them. Richardson again sold two and one-half ounces of crack cocaine to Scott for $2,800.

Through a series of telephone calls on February 11, 1989, Scott attempted to negotiate a purchase of four ounces of crack cocaine from Fells. Fells related that he was attempting to replenish his supply and would soon be able to deliver the requested crack cocaine because he had an associate who was "going to make a move for [him]." Later that day, when Fells was unable to locate an associate he referred to as one of "his boys," he told Scott, "He can't make no move without me anyway,

you know what I mean." Scott tape recorded all of his conversations with Fells.

A jury convicted Fells on five counts of distribution of crack cocaine. Fells' base offense level under the sentencing guidelines was 34. U.S.S.G. § 2D1.1(a)(3).[1] The court found that Fells was a leader or organizer in a criminal activity that involved five or more participants, and increased the base offense level by 4. U.S.S.G. § 3B1.1(a). The court then reduced the offense level by 2 for acceptance of responsibility. U.S.S.G. § 3E1.1(a). Fells' resulting offense level of 36, combined with a criminal history category III, yielded a guidelines range of 235 to 293 months. The court sentenced Fells to a term of imprisonment of 240 months.

## II.

At trial the government played the tape recordings of the February 11, 1989 conversations and solicited testimony regarding the circumstances surrounding the conversations. Fells contends that this evidence should not have been admitted because the prejudicial effect of these later bad actions outweighed their probative value to the government's case. Holding that the evidence was relevant under Federal Rule of Evidence 404(b), the district court permitted the jury to receive the evidence.

In determining the admissibility of evidence under Rule 404(b), the court "must balance its probative value, defined as its relevance, necessity, and reliability, against the prejudice to the defendant of admitting the evidence." *United States v. Hadaway*, 681 F.2d 214, 217 (4th Cir.1982) (citing *United States v. DiZenzo*, 500 F.2d 263, 266 (4th Cir.1974)). The conversations related temporally and substantively to Fells' alleged crack cocaine distribution network. The district court concluded that the conversations were relevant because they were "so close in time as to be part of a common plan, scheme or design, and would show intent." *See* Fed.R.Evid. 404(b) (evidence of bad acts admissible to prove intent

1. Unless otherwise noted, all references are to the October 15, 1988 version of the *Guidelines*

*Manual* under which Fells was sentenced.

and plan); *see also Hadaway,* 681 F.2d at 217 (actions occurring after an event can be strong evidence of intent). Although there was clear evidence of Fells' involvement in drug distribution, he carefully distanced himself from the transactions by using others to actually handle the drugs. These conversations were relevant evidence that supported the proposition that Fells held a position of leadership within the organization and demonstrated his intent in the previous transactions. A verbatim, contemporaneous tape recording of the conversations clearly established the reliability of the evidence.

The district court specifically found that the probative value of the evidence outweighed any prejudice to the defendant. The court of appeals will not disturb an evidentiary decision that involves balancing the probative value of evidence against its prejudicial effect unless the district court abused its discretion. *United States v. Ramey,* 791 F.2d 317, 323 (4th Cir.1986). We find no abuse of discretion in the district court's ruling.

### III.

Because Fells' offenses occurred after November 1, 1987, his sentence is governed by the Sentencing Reform Act of 1984, 18 U.S.C.A. § 3551, *et seq.* (West 1985 & Supp. 1990), and the sentencing guidelines promulgated by the United States Sentencing Commission. Fells contends that the district court erroneously increased his base offense level under the guidelines by 4 for his role in the offense.

### A.

■ A defendant's base offense level should be increased by 4 if he "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). To be included as a participant, one must be "criminally responsible for the commission of the offense." U.S.S.G. § 3B1.1, comment. (n.1). The district court

named five individuals it counted as participants in Fells' organization, including Scott and Ford, but excluding Fells. Neither Scott nor Ford, however, can be counted as a participant in Fells' organization because as government agents neither was criminally responsible for any actions taken in the investigation. Scott was an undercover police officer attempting to gather evidence against Fells by making crack cocaine purchases. *United States v. Carroll,* 893 F.2d 1502, 1507–09 (6th Cir.1990) (non-culpable government agents not included as participants under U.S.S.G. § 3B1.1). Ford was an informant and undercover operative who had not been involved in Fells' distribution network and was acting at the direction of the government. *Cf. United States v. Dyer,* 910 F.2d 530 (8th Cir.) (informant involved in drug organization before cooperating with government counted as a participant), *cert. denied,* — U.S. ——, 111 S.Ct. 276, 112 L.Ed.2d 232 (1990). Fells, as principal, should be included as a participant. *United States v. Preakos,* 907 F.2d 7, 10 (1st Cir.1990). If Scott and Ford are not included, and Fells is included, only four criminally responsible individuals were identified by name by the district court as participants in the offenses for which Fells was convicted.

■ On appeal Fells concedes that the record supports a finding that he supplied crack cocaine to at least 17 other individuals who were themselves distributors, and to whom the district court referred when considering the applicability of a role in the offense adjustment. These individuals were not end users, *cf. United States v. Weidner,* 703 F.Supp. 1350 (N.D.Ind.1988) (end users not considered in determination of defendant's role as organizer or leader of criminal activity), *aff'd,* 885 F.2d 873 (7th Cir.1989), but were lower level distributors used by Fells to market illegal drugs. Although not identified by name, they were properly considered by the district court before finding that a 4-level increase for role in the offense applied.[2] Thus, the dis-

---

**2.** Arguably, this factual finding by the district court was tantamount to a determination that the criminal activity of which Fells was an orga-

nizer or leader was "otherwise extensive" within the meaning of U.S.S.G. § 3B1.1(a) and application note 2. That determination would have

trict court finding that this enhancement should apply was not clearly erroneous. *United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir.1989).

### B.

Fells argues that even if he were "an organizer or leader of a criminal activity that involved five or more participants," the counts of conviction for which he was sentenced were not committed by him in this capacity. Thus, he maintains that this aggravating factor should not apply because the counts of conviction involved his conduct as a sole distributor or, at best, controlling the actions of fewer than five participants.[3]

The scope of criminal activity applicable to the determination of a defendant's role in the offense is set forth in U.S.S.G. §§ 1B1.2(b) and 1B1.3. The former section states: "After determining the appropriate offense guideline section pursuant to subsection (a) of this section, determine the applicable guideline range in accordance with § 1B1.3 (Relevant Conduct)." Application notes 2 and 3 to section 1B1.2[4] further explain Commission intent that "Relevant Conduct," as defined in U.S.S.G. § 1B1.3, be used to ascertain the appropriate adjustments in Chapter Three of the *Guidelines Manual,* of which Role in the Offense is one such adjustment. The Relevant Conduct guideline, U.S.S.G. § 1B1.3, plainly states that its described scope of conduct applies to *Chapter Three adjustments* "unless otherwise specified,"[5] and no language in the Role guidelines specifies or indicates a different intent.

We note that several courts of appeals have construed role determinations as being more narrowly based on the conduct or transaction(s) of which the defendant was convicted,[6] as Fells contends his role should

---

permitted the 4-level role enhancement independently of whether the district court found that the criminal activity involved five or more participants. However, since the sentencing court did not expressly rely on this alternative basis for an aggravating role enhancement, and in view of our determination, we need not address this possible alternative.

**3.** Fells concedes that a 2-level enhancement under U.S.S.G. § 3B1.1(c) might be applicable because with reference to the counts of conviction the record demonstrates his supervision of three individuals.

**4.** These application notes state in pertinent part:
2. Section 1B1.2(b) directs the court, once it has determined the applicable guideline (*i.e.,* the applicable guideline section from Chapter Two) under § 1B1.2(a) to determine any applicable specific offense characteristics (under that guideline), and *any other applicable sentencing factors* pursuant to the relevant conduct definition in § 1B1.3....
3. In many instances, it will be appropriate that the court consider the actual conduct of the offender, even when such conduct does not constitute an element of the offense.... It is ... typically so when the court considers the applicability of specific offense characteristics within individual guidelines, [and] when it considers *various adjustments....* See §§ 1B1.3 (Relevant Conduct)....
(Emphasis added.)

**5.** U.S.S.G. § 1B1.3 states, in pertinent part:
§ 1B1.3. *Relevant Conduct (Factors that Determine the Guideline Range)*
....

(a) *Chapters Two (Offense Conduct) and Three (Adjustments).* Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) *adjustments in Chapter Three,* shall be determined on the basis of the following:
(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;
(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction....
(Emphasis added.)

**6.** *See United States v. Zweber,* 913 F.2d 705, 708–10 (9th Cir.1990); *United States v. Pettit,* 903 F.2d 1336, 1340–41 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 197, 112 L.Ed.2d 159 (1990); *United States v. Tetzlaff,* 896 F.2d 1071, 1074–75 (7th Cir.1990); *United States v. Williams,* 891 F.2d 921, 926 (D.C.Cir.1989); *United States v. Lanese,* 890 F.2d 1284, 1293–94 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2207, 109 L.Ed.2d 533 (1990). *Compare United States v. Barbontin,* 907 F.2d 1494, 1498 (5th Cir.1990) (adjustment must be "anchored to the transaction leading to the conviction"), *with*

be determined. These courts appear either to have overlooked the directions in U.S.S.G. §§ 1B1.2(b) and 1B1.3, or to have read the term "offense" in Chapter Three, Part B, as if it were an "otherwise specified" exception to section 1B1.3(a) and synonymous with the term "offense of conviction." The failing of this interpretation is that nowhere in this Part of the *Guidelines Manual* is the term "offense of conviction" employed, and the commentary to section 1B1.3 cautions against reading guideline language in Chapters Two and Three in a narrow, conviction-based frame of reference absent express direction.[7] In fact, the *Guidelines Manual* frequently employs the term "offense" throughout Chapters Two and Three in a manner that can only mean "relevant conduct of the offense," and it uses the terms "convicted of" or "offense of conviction" when a different, narrower scope of criminal conduct (or a higher standard of proof) was intended. Granted, guideline role determinations are to be made for an *offense* or *count of conviction*, but that is different from concluding that the role determination is limited to the conduct *embodied in* the count or offense of conviction.

Fells was convicted of five counts of crack cocaine distribution, offenses to which U.S.S.G. § 2D1.1, an aggregable, quantity-based guideline applies. Under this guideline and § 1B1.3 (Relevant Conduct), the district court properly determined the offense level by aggregating the entire quantity of drugs for which Fells was accountable in "the same source of conduct or common scheme or plan as the offense[s] of conviction." U.S.S.G.

§ 1B1.3(a)(2). The guidelines similarly provide that Fells' role determination is to be based, not solely on his role in the counts of conviction, but on his role in the entirety of his relevant conduct.[8] Thus, when Fells' five counts of conviction are grouped under U.S.S.G. § 3D1.2, "adjustments from Chapter Three, Parts A, B, and C apply based upon the combined offense behavior taken as a whole."[9] U.S.S.G. § 3D1.3, comment. (n.3). Role in the offense is a Chapter Three, Part B, adjustment.

Other provisions in the guidelines confirm that the Sentencing Commission intended a real offense/relevant conduct approach to role determinations. An adjustment for role in the offense "should increase with both the size of the organization and the degree of the defendant's responsibility." U.S.S.G. § 3B1.1, comment. (backg'd.). Additionally, in assessing a defendant's role, the court should consider "the nature and scope of the illegal activity." U.S.S.G. § 3B1.1, comment. (n.3). Finally, the intent of the Sentencing Commission is again demonstrated by a clarifying November 1, 1990 amendment that provides that the defendant's role in the offense is to be determined "on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), *i.e.*, all conduct included under § 1B1.3(a)(1)–(4), and not solely on the basis of elements and acts cited in the count of conviction." U.S.S.G. Ch. 3, Pt. B, intro. comment. (November 1, 1990 edition).

When an issue involves a legal interpretation of a guideline term, this court exercises a standard of review close to *de novo*.

---

*United States v. Manthei,* 913 F.2d 1130, 1136–37 (5th Cir.1990) (scope of section 3B1.1(a) encompasses all the relevant conduct which "directly brought about the more limited sphere of the elements of the specific charged offense" because "[t]he offense of conviction involved the last link of a continuous chain of transaction in manufacturing, distributing, and retailing amphetamine.")

7. *See* U.S.S.G. § 1B1.3, comment. (n.5).

8. ·For a discussion of the application of section 3B1.2 (Mitigating Role), see *United States v. Glasco,* 917 F.2d 797 (4th Cir.1990), and *Daughtrey,* 874 F.2d at 218–19.

9. If, under the guidelines, a defendant's role determination was limited to his role in the offense(s) of conviction, rather than determined after considering his role in the entirety of his relevant conduct, anomalous results would sometimes occur. We do not believe the Commission could have intended to enhance the offense level under Chapter Two of the *Guidelines Manual* in accord with relevant conduct principles but then selectively abandon those principles when determining the Chapter Three adjustment for role.

*Daughtrey,* 874 F.2d at 217. Accordingly, we reject the argument that when analyzing the applicability of a role in the offense enhancement a court is bound by the narrow scope of the offense for which a defendant was convicted. A court should look beyond the count of conviction when considering the application of this enhancement and make its determination after considering all conduct within the scope of section 1B1.3 (Relevant Conduct). Although not embodied within the specific counts of conviction, the district court found that Fells was the leader of a larger narcotics distribution organization, a finding that was not clearly erroneous. Thus, the district court properly increased Fells' offense level by 4 for his role in the offense.

AFFIRMED.