**UNITED STATES of America**

v.

**Carlos MURILLO, Appellant.**

**Nos. 90–3661 to 90–3663.**

United States Court of Appeals,
Third Circuit.

Argued March 1, 1991.

Decided May 8, 1991.

Kevin J. O'Connell (argued), Wilmington, Del., for appellant.

Richard G. Andrews (argued), First Asst. U.S. Atty., Wilmington, Del., for appellee.

Before STAPLETON and ALITO, Circuit Judges, and CAHN,* District Judge.

## OPINION OF THE COURT

CAHN, District Judge:

This is an appeal from an order of judgment including sentence entered in the United States District Court for the District of Delaware. At issue is the decision to increase the appellant's sentencing level under the United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S. G.") to take into account all relevant criminal activity he engaged in beyond the elements of his offense of conviction. We reverse the district court's decision and remand for resentencing.

## I. FACTS

This case arose out of a lengthy investigation by the Drug Enforcement Agency ("DEA"), in conjunction with local law enforcement officials, into the activities of a group of suspected cocaine and marijuana traffickers in the Wilmington, Delaware area. Indictments were brought against the appellant and a number of co-defendants, including Milton Diaz, Vincent Spina, Denia Murillo, and Timothy Anderson, on various drug trafficking and related charges. The Government alleged that Murillo was the organizer of this group.

After a number of co-defendants agreed to provide the Government with trial testimony, the appellant pleaded guilty on October 17, 1989 to four offenses: possession with intent to distribute more than 500 grams of cocaine (21 U.S.C. § 841(a)(1) and (b)(1)(B)), illegal structuring of a financial transaction (31 U.S.C. §§ 5324(3) and 5322 and 18 U.S.C. § 2), tax evasion (26 U.S.C. § 7201), and possession of a firearm by a drug user (18 U.S.C. §§ 922(g)(3) and 924(a)(2)). Frank J. Larry of the United States Probation Office conducted a presentence investigation. Pursuant to the Rules of Criminal Procedure, the Government submitted the prosecution's version of the offenses. After Mr. Larry prepared a Presentence Report ("Report"), Murillo interposed objections to the contents of the Report. Prior to sentencing, Murillo submitted a sentencing memorandum summarizing legal arguments to be made at the sentencing hearing, which occurred on September 5, 1990.

One of the issues raised by the presentence report, and which was the subject of a dispute between the Government and Murillo, was whether the defendant's guideline calculation should be enhanced by four levels pursuant to § 3B1.1(a) of the Sentencing Guidelines by categorizing Murillo as "... an organizer or leader of a criminal activity that involved five or more participants...." The Government argued that when making a determination as to whether the defendant was an organizer of criminal activity involving five or more participants, the court should focus on all relevant aggravating conduct. Murillo argued

that only his role in the offense of conviction was relevant to the court's determination under § 3B1.1(a).

The Relevant Conduct section of the Presentence Report focused on all members of the loose organization which was the subject of the DEA investigation. The Report noted that Murillo utilized a telephone pager with code numbers for more than fourteen individuals who played various roles in the organization. In addition, the Report made reference to a diary, discovered in Murillo's possession at the time of his arrest, which contained the names of various individuals indebted to him. Finally, the Report described the cooperation between the appellant and many individuals in obtaining and distributing marijuana and cocaine, transferring money to avoid Internal Revenue Service detection, and concealing assets acquired by the appellant. Paragraph 35 of the Report increased Murillo's base offense level "by four (4) levels as the defendant was an organizer of criminal activity that involved five or more participants. (3B1.1(a))."

Paragraphs six through fourteen of the Presentence Report described the offense conduct for the charges to which Murillo pleaded guilty. On the structuring count, the Report described the cooperation of Murillo and Milton Diaz in attempting to wire money from local Florida banks to a Florida law firm in an effort to circumvent currency transaction reporting requirements. On the tax evasion count, the Report compared the annual income set forth on Murillo's income tax return for the calendar year 1987, with the far greater expenditures Murillo registered that same year. On the firearm possession count, the Report described the purchase, possession, and discovery of a small pistol found in close proximity to certain drugs later attributed to Murillo. Finally, on the charge of possession with intent to distribute more than 500 grams of cocaine, the Report related the discovery of 715 grams of cocaine in a filing cabinet and metal tool box owned by Murillo but located in Vincent Spina's house. The Report also explained how the police found 275 pounds of marijuana in a Chevy Blazer owned by Murillo and parked at the house of an individual named Eddie Brooks.

At the September 5, 1990 sentencing hearing, the district court stated that "it [was] necessary, in making [the] determination [whether to enhance Murillo's offense level by four points], to look at the entire activity, to look at all of the relevant conduct, rather than one particular offense to which there is a guilty plea." After reviewing all relevant conduct in the case, the court found that Murillo was the leader of a drug distribution network involving at least seventeen people. Accordingly, the court sentenced Murillo, pursuant to the Sentencing Guidelines, to a 195–month prison term and five years of supervised release, plus a $200 special assessment.

In rendering its decision the district court found persuasive various commentaries to § 3B1.1, which it felt suggested that the proper focus at sentencing should be on the defendant's overall criminal network, rather than simply the number of participants in the offense of conviction. The district court also relied on proposed amendments to the Sentencing Guidelines which purport to clarify the language and the United States Sentencing Commission's intent in drafting § 3B1.1. Accordingly, the court deemed it appropriate to increase the appellant's offense level by four, finding "that the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The district court determined that the total offense level for the appellant was 36, with a criminal history category of I.

On September 14, 1990, the appellant filed a Notice of Appeal. This court has appellate jurisdiction of this appeal from a final judgment and sentence in a criminal case pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## II. DISCUSSION

■ The standard and scope of review of a trial judge's application and interpretation of the Sentencing Guidelines is plenary. *United States v. McDowell*, 888 F.2d

285, 292 (3d Cir.1989). The factual findings of a district court concerning sentencing issues are subject to a clearly erroneous standard of review; however, when a judicial finding involves mixed questions of law and fact, the standard and scope of review takes on greater scrutiny, approaching *de novo* review as the issue moves from one of strictly fact to one of strictly law. *United States v. Ortiz*, 878 F.2d 125, 126–27 (3d Cir.1989).

This is not the first time we have had to interpret § 3B1.1 of the Sentencing Guidelines. In *United States v. Inigo*, 925 F.2d 641, 659–60 (3d Cir.1991), we adopted the Fifth Circuit's interpretation of § 3B1.1 as expounded in *United States v. Manthei*, 913 F.2d 1130, 1134–37 (5th Cir.1990). Today, we follow *Inigo* and reiterate our prior interpretation of § 3B1.1(a).

Part B of Chapter 3 of the Sentencing Guidelines permits a sentencing court to adjust the offense level under a given case to reflect accurately the defendant's culpability in the crime, i.e., his "role in the offense." Section 3B1.1 allows the sentencing court to increase the offense level if the defendant was an "organizer," "leader", or "supervisor." Section 3B1.2 allows a court to decrease the offense level if the defendant was a "minimal" or "minor" participant. The Introductory Commentary to these sections states that "[w]hen an offense is committed by more than one participant, § 3B1.1 or § 3B1.2 (or neither) may apply." Unless the defendant abused a position of trust or used a special skill in committing the offense, the Sentencing Guidelines do not otherwise provide for "role in the offense" adjustments. *See* § 3B1.4 ("In any other case, no adjustment is made for role in the offense").

In other sections, the Sentencing Guidelines distinguish between relevant conduct and the offense of conviction. Relevant conduct is defined as:

(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or ... that otherwise were in furtherance of that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction;

§ 1B1.3(a). Ordinarily, all "relevant conduct" should be considered in determining offense level. § 1B1.3(a). The Background to § 1B1.3 states that "[s]ubsection (a) establishes a rule of construction" in determining "the range of conduct that is relevant to determining the applicable offense level," but only "in the absence of more explicit instructions in the context of a specific guideline." Section 3B1.1 is an explicit instruction which mandates a departure from 1B1.3(a). Section 3B1.1 provides in relevant part:

Based on the defendant's role in the *offense*, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a *criminal activity that involved five or more participants or was otherwise extensive*, increase by four levels.

(emphasis added).[1]

■ The Circuits have not been unanimous in their interpretation of the term

---

**1.** The Sentencing Commission amended the Sentencing Guidelines effective November 1, 1990. The Introductory Commentary to Ch. 3, Pt. B now states:

The determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), *i.e.*, all conduct included under § 1B1.3(a)(1)–(4), and not solely on the basis of elements and acts cited in the count of conviction. However, where the defendant

has received mitigation by virtue of being convicted of an offense significantly less serious than his actual criminal conduct, *e.g.*, the defendant is convicted of unlawful possession of a controlled substance but his actual conduct involved drug trafficking, a further reduction in the offense level under § 3B1.2 (Mitigating Role) ordinarily is not warranted because the defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense.

"the offense" in § 3B1.1. In *United States v. Fells,* 920 F.2d 1179, 1185 (4th Cir.1990), the court interpreted the term to mean both the conduct comprising the offense of conviction and all conduct within the scope of § 1B1.3. To us, however, the common sense reading of "the offense" as used in § 3B1.1 is "the offense of conviction." We are joined in this reading by the eighteen judges who decided *United States v. Zweber,* 913 F.2d 705, 709 (9th Cir.1990); *United States v. Barbontin,* 907 F.2d 1494, 1498 (5th Cir.1990); *United States v. Pettit,* 903 F.2d 1336, 1340–41 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 197, 112 L.Ed.2d 159 (1990); *United States v. Tetzlaff,* 896 F.2d 1071, 1074–75 (7th Cir.1990); *United States v. Williams,* 891 F.2d 921, 925 (D.C.Cir.1989); and *United States v. Lanese,* 890 F.2d 1284, 1293–94 (2d Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2207, 109 L.Ed.2d 533 (1990).

It is important to emphasize that our reading of "the offense" as meaning the "offense of conviction" does not mean that only the conduct comprising the specific elements of the offense of conviction may be considered in determining offense levels. We disagree with the position taken in *Fells* that the only alternative to considering all conduct within § 1B1.3 is to limit role determination to the specific conduct that satisfies the elements of the offense of conviction. *Fells,* 920 F.2d at 1184. Rather, we believe that our interpretation stakes out a middle ground between, on the one hand, considering only the offense of conviction, *see, e.g., Zweber,* 913 F.2d at 709, *Pettit,* 903 F.2d at 1340–41, *Williams,* 891 F.2d at 926, and *Tetzlaff,* 896 F.2d at 1074, and, on the other hand, considering all relevant conduct under § 1B1.3, *see, e.g., Fells,* 920 F.2d at 1184.

■ For us, the most logical way to interpret the various terms in Chapter 3 of the Guidelines is that "the offense," "offense of conviction," and "instant offense" all refer to conduct of the offense of conviction, *including* all conduct in furtherance of the offense of conviction. On the other hand, the terms "criminal conduct," "criminal activity," and "relevant conduct" include all the conduct of § 1B1.3—both conduct of the offense of conviction and conduct that is part of the same scheme or course of conduct as the offense of conviction. We do not agree with the conclusion in *Fells* that "all conduct within the scope of section 1B1.3" is to be considered for role determinations. *Fells,* 920 F.2d at 1185. Such a reading changes the article before "offense" in § 3B1.1 from "the" to "an." Instead, we think that the best approach is the common sense reading of § 3B1.1 adopted in *Manthei*[2] and *Inigo.*

Under our approach in *Inigo,* "the offense" in § 3B1.1 includes "the offense charged as well as 'the underlying activities and participants that directly brought about the more limited sphere of the elements of the specific charged offense.'" 925 F.2d at 659 (quoting *Manthei,* 913 F.2d at 1136); *accord Barbontin,* 907 F.2d at 1498 (citing *Williams,* 891 F.2d at 926, and *Lanese,* 890 F.2d at 1293–94) ("a § 3B1.1(a) adjustment is anchored to the transaction leading to the conviction"). Thus, when determining role in the offense for all offenses committed before November 1, 1990, a court should look both to the acts or omissions of the defendant that satisfied

---

It is uncontested that the amendments to the Guidelines do not apply to Murillo's offenses, because they occurred before the amendments took effect. Nevertheless, the Government argues that the amendments were intended to clarify the Guidelines, and, therefore, we should apply them here. We decline this offer, largely because it is not clear to us whether the amendments clarify or change the Guidelines and because we find the earlier language of the Guidelines unambiguous.

**2.** The issue presented in *Manthei* was whether the criminal activity to be considered included only the distribution of two ounces of amphet-

amine or embraced all activities related to making the two ounces of amphetamine available for final distribution. 913 F.2d at 1135. The court stated that it was looking at criminal activity "directly tied to the offense of conviction," *id.* at 1137, but it concluded that "the offense" includes the underlying activities that "directly brought about the more limited sphere of the elements of the specific charged offense." *Id.* at 1136. The court, therefore, considered the defendant's role in the entire manufacturing and distribution process that led to the distribution of the two ounces of amphetamine.

the specific elements of the offense of conviction and to those that brought about the offense of conviction, i.e., all acts or omissions that were in furtherance of the offense of conviction.

Our approach is necessary because in many cases a court simply cannot determine "the defendant's role" by looking at only the specific elements of the offense of conviction. The "defendant's role" is a concept that requires a court to consult the events leading up to the offense of conviction, not just a snapshot of events at the instant the offense occurred. When a defendant is charged with possessing 100 grams of cocaine at a given place and time with the intent to distribute, for example, a court cannot determine, "based on the defendant's role in the offense," whether the defendant was "an organizer or leader of a criminal activity."

 Here, of the four offenses to which Murillo pleaded guilty, only the charge of possession with intent to distribute more than 500 grams of cocaine calls for potential enhancement under § 3B1.1. As described in the Presentence Report at ¶ 14, the police found Murillo's cocaine in a filing cabinet seized from the home of a co-defendant, Vincent Spina. Viewing the evidence in the light most favorable to the Government, the description of this offense conduct suggests that Murillo was in joint possession of the cocaine with Spina. The district court improperly considered all relevant conduct by Murillo which was not related to the offense of conviction.[3] Therefore, the district court's finding that Murillo's offense of conviction involved five or more participants was clearly erroneous and must be reconsidered. On remand the court may look to any persons in Murillo's organization who were involved in the purchase and intended distribution of the 715 grams of cocaine, as well as the persons who were in joint possession of these drugs.

### III.  CONCLUSION

 We hold that in making role in the offense determinations for defendants whose crimes were committed before November 1, 1990, a court should consider both conduct comprising the offense of conviction and conduct in furtherance of the offense of conviction. For defendants whose crimes were committed on or after November 1, 1990, a court should consider all relevant conduct under § 1B1.3 of the Guidelines. Because Murillo committed his crimes before November 1, 1990, we reverse the judgment of sentence of the district court and remand for resentencing.[4]

---

3. The district court did not base Murillo's sentence upon whether his criminal activity "was otherwise extensive" under § 3B1.1, and we do not consider that issue.

4. Judge Alito concurs in the result based on the binding effect of our decision in *United States v. Inigo.*