998 F.2d 1010
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Elease M. JOHNSON, Defendant-Appellant.
 No. 92-5351.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: March 4, 1993.
Decided: July 16, 1993.
 
 Appeal from the United States District Court for the District of South Carolina, at Florence. Dennis W. Shedd, District Judge. (CR-91-366)
 John H. Hare, Assistant Federal Public Defender, Columbia, South Carolina, for Appellant.
 John S. Simmons, United States Attorney, William E. Day, II, Assistant United States Attorney, Florence, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED.
 Before WILKINSON and HAMILTON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Elease M. Johnson appeals from the district court's entry of judgment and pronouncement of sentence upon a jury verdict. Johnson was found guilty of making a false statement regarding the tainting with a dangerous substance of a consumer good in interstate commerce, in violation of 18 U.S.C. § 1365(c)(1) (1988). Her court-appointed counsel filed a brief in accordance with Anders v. California, 386 U.S. 738 (1967), raising one issue, but contending that no issues existed that merited appeal. Counsel and this Court notified Johnson of her right to file a supplemental brief; she has not done so. In addition to the issue raised by Johnson's counsel, we have discovered two other issues worthy of appellate review. However, because all three issues ultimately fail to provide reversible error, we affirm the district court's judgment and sentence.
 
 I.
 
 2
 Prior to trial Johnson's counsel moved for the suppression of a confession Johnson made to a Food and Drug Administration official, Tamara Smith, that she had tainted baby food with glass slivers and fed some of the food and slivers to her infant son. Johnson contended that the statement was not made voluntarily, and so was inadmissable at trial. During the suppression hearing, the district court heard testimony from Smith and a policeman, Tim Kemp, who accompanied Smith on her investigation concerning the statement the Government sought to enter at trial. The court also heard from Johnson's adult daughter and Johnson's sister. The court determined that Johnson was not in custody at the time she gave the confession statement to Smith, and that the statement was given voluntarily. Therefore, the district court denied the motion to suppress. The court's denial is reviewed only for abuse of discretion. See United States v. Gravely, 840 F.2d 1156, 1162 (4th Cir. 1988); Persinger v. Norfolk & W. R. R., 920 F.2d 1185, 1187 (4th Cir. 1990). Cf. Massachusetts v. Upton, 466 U.S. 727, 732-33 (1984) (district court's suppression hearing decision that no Fourth Amendment violation occurred is reviewed to determine whether the evidence presented provided a substantial basis for the court's decision).
 
 
 3
 The evidence showed that Johnson led Smith and Kemp to her bedroom when Smith came for a second investigatory interview with Johnson. This interview was conducted in part with the door to the bedroom closed, and in part with the door opened. The Government produced testimony that Johnson left the room at least once-to get her children and grandchildren some cookies or cereal to eat. The witnesses disagreed about who shut the door when it was shut. However, there is no disagreement that Johnson was not given any warnings pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), and did not assert her Fifth Amendment rights. Smith and Kemp contended that they would have stopped asking questions and left the premises had Johnson so requested. Smith also admitted that Johnson said she would not submit to a polygraph test until she had spoken with an attorney. Johnson's daughter testified that she overheard Kemp offering a settlement to Johnson. Kemp denied he made any such offer.
 
 
 4
 Smith had interviewed Johnson three days earlier regarding Johnson's report that she had found glass slivers in Gerber baby food purchased at a local grocer's. During her return visit Smith intimated to Johnson that she believed the baby food was not adulterated prior to its having been opened in the Johnson household, and that Johnson had adulterated the food or was covering up for another family member. Smith told Johnson that there were fines and penalties for tampering with goods in interstate commerce, and that it would be best to tell the truth.
 
 
 5
 The evidence shows that, upon the imminent departure of Smith and the officer, Johnson called them back into the bedroom to confess that she had adulterated the baby food. Smith took down the substance of Johnson's confession, and Johnson signed the statement. It is not contested that Johnson cannot read and can only write her name. At the suppression hearing no testimony was offered that Johnson had not read the statement; however, at trial Johnson denied that Smith read the statement to her prior to her having signed it. Finally, it was not contested at trial that Johnson had, through earlier statements, led others, including Smith, to believe that she had received the baby food in its untainted state.[1]
 
 
 6
 The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against [her]self." U.S. Const. Amend. V. This privilege applies not only in criminal proceedings, but also in "any other proceeding ... where the answers might incriminate [her] in future criminal proceedings." Lefkowitz v. Turley, 414 U.S. 70, 77 (1973) (citation omitted). Thus, Smith's questioning of Johnson, although informal and of a regulatory investigation nature, posed the same threat to Johnson's Fifth Amendment rights as a criminal investigation or trial. However, volunteered statements are not protected. Estelle v. Smith, 451 U.S. 454, 469 (1981) (citation omitted).
 
 
 7
 The test for voluntariness of a confession is whether, considering the totality of the circumstances, the state actors have overborne the will of the accused. Haynes v. Washington, 373 U.S. 503, 513 (1963) (citations omitted). The setting in which the confession was obtained, details surrounding the interrogation, and the characteristics of the accused are all considered in analyzing the voluntariness of the confession. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). Johnson was at home during her interrogation by Smith. She was allowed to leave the room in which she was being interrogated. Family members were only a few feet away in the hall and living room of the apartment. Further, there was evidence before the district court that, at the time Johnson proffered her confession, both Smith and the officer were on their way out of Johnson's bedroom. The setting of Johnson's confession was not coercive. Cf. Oregon v. Elstad, 470 U.S. 298, 315 (1985) (interrogation at midday, in living room of suspect's living room, with mother in kitchen area nearby not coercive). Compare Elstad, 470 U.S. at 315 with Oregon v. Mathiason, 429 U.S. 492, 494-95 (1977) (questioning in home after arrest was "custodial").
 
 
 8
 The details surrounding Johnson's confession do not provide any compelling reason for finding the confession involuntary. This was Smith's second interview with Johnson. Although Smith told Johnson that she believed a family member had adulterated the food, she maintained her former investigative stance of trying to find out when the adulteration occurred; Johnson could have easily maintained her original story at this point in time. Also, the fact that the police officer accompanying Smith was in uniform is of no moment. If the mere presence of a uniformed police officer damped the voluntariness of an admission or confession made without Miranda warnings, few confessions would be admissible. See Berkemer v. McCarty, 468 U.S. 420, 438 (1984) (noting that presence of uniformed officers presents some level of coercive pressure, but insufficient to automatically trigger Miranda warning necessity).
 
 
 9
 The final consideration involved in the voluntariness of Johnson's confession are the characteristics of Johnson herself. Johnson's sister testified that Johnson was less than fully capable of mature decisionmaking, and there is ample evidence that Johnson's formal education has left her illiterate. However, Johnson's own comments during her questioning show that she did not believe she had no option but to confess her crime. She asked Smith what would happen if she told the truth. She left the room during the interview at least once. And she stopped Smith and the police officer on their way out of her bedroom to tell them that she had adulterated the baby food. All of these actions tend to show that Johnson knew she did not have to speak with the officials, but that she decided to confess her illegal acts. The district court did not err in refusing to suppress the confession Johnson gave to Smith in the presence of the police officer.
 
 II.
 
 10
 During trial Johnson's counsel moved for the suppression of statements Johnson made to an attorney, Paul Canarella, and his secretary, Patricia Sparrow, about the adulteration of the baby food. Sparrow testified in the Government's proffer that Johnson had come to her in the late morning of May 2, 1990, and asked about seeing Canarella regarding some glass she found in baby food. Sparrow told Johnson that Canarella was not in the office, and that Johnson should go to the police. Johnson testified that she spoke with Sparrow on May 3, after she fed the baby the adulterated food in the evening on May 2. Johnson testified further that she called Canarella later that day and spoke with him regarding her options. Canarella testified that he could not remember when he spoke with Johnson.
 
 
 11
 The district court found Sparrow's proffer testimony more credible than Johnson's. This Court will not disturb that credibility determination. Breeden v. Weinberger, 493 F.2d 1002, 1010 (4th Cir. 1974). The court found that, because the statements to Sparrow were made prior to Johnson's having fed the baby the glass, the attorney-client contact was for the purpose of committing a crime or fraud. We will uphold the district court's decision to deny the suppression of this evidence absent an abuse of discretion. Cf. Upton, 466 U.S. at 732-33. Based on its interpretation of the witnesses' credibility, the district court's decision to deny the suppression motion was supported by substantial evidence. The district court found that Johnson had spoken with Canarella and Sparrow to gain information to help her perpetuate the fraud she intended. The testimony supports the district court's determination. Such statements are not entitled to protection via the attorney-client privilege. United States v. Oloyede, F.2d, No. 91-5833, slip op. at 13 (4th Cir. Nov. 24, 1992). Thus, the district court did not err in denying the motion to suppress the statements Johnson made to Canarella and Sparrow.
 
 III.
 
 12
 Finally, there was no error in the district court's decision to increase the offense level two points because of the existence of a vulnerable victim. Although the "victim" of the underlying crime was either Gerber,[2] Piggly Wiggly,[3] or interstate commerce in general, the district court used the United States Sentencing Commission, Guidelines Manual, § 3A1.1 (Nov. 1992) (Guidelines), to increase the offense level because it found Johnson's baby was a vulnerable victim of the crime.[4] The court found that Johnson's feeding the baby the glass slivers was "relevant conduct" pursuant to U.S.S.G. § 1B1.3, thus meriting the increase. Section 1B1.3 provides that any adjustments in chapter three of the Guidelines (of whichs 3A1.1 is a part) shall be determined on the basis of "all acts and omissions committed ... by the defendant; ... that occurred during the commission of the offense of conviction [or] in preparation for that offense...." U.S.S.G. § 1B1.3.
 
 
 13
 The district court stated that it was making a legal finding that the conduct at issue here was one contemplated by the relevant conduct section of the Guidelines. "When an issue involves a legal interpretation of a guideline term, this court exercises a standard of review close to de novo." United States v. Fells, 920 F.2d 1179, 1184 (4th Cir. 1990) (citation omitted). The relevant conduct section of the Guidelines applies to vulnerable victim adjustments. United States v. Yount, 960 F.2d 955, 958 (11th Cir. 1992); United States v. Fells, 920 F.2d 1179 (4th Cir. 1990). Certainly, Johnson's feeding the glass to her infant son was in preparation of the offense of making the false statement. Johnson made the false statement in her attempt to perpetuate a fraud that the baby food was adulterated, so as to gain a money settlement. Further, the adjustment was appropriate, because the child's infancy made him particularly vulnerable to ingesting the glass his mother fed him; he was dependent on Johnson and could not protect himself from her misconduct. The district court did not err in its legal determination that the adjustment was merited.
 
 
 14
 Because the district court did not err in not suppressing both the confession and the allegedly privileged statements, and because the trial court did not err in adjusting the base level of Johnson's offense, we affirm the conviction and sentence. In accordance with the requirement of Anders, we have examined the entire record in this case and find no other potentially meritorious issues for appeal. Pursuant to the plan adopted by the Fourth Circuit Judicial Council in implementation of the Criminal Justice Act of 1964 (18 U.S.C. § 3006A (1988)), this Court requires that counsel inform his client, in writing, of her right to petition the Supreme Court for further review. If requested by his client to do so, counsel should prepare a timely petition for a writ of certiorari. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 We note that Johnson's confession, if not suppressed, provided sufficient evidence from which the jury could find that Johnson violated 18 U.S.C. § 1365(c)(1). See Jackson v. Virginia, 443 U.S. 307, 319 (1979)
 
 
 [2]
 Gerber manufactured the baby food and was the intended target of the product liability action
 
 
 [3]
 Piggly Wiggly was the grocer that sold the baby food to Johnson and had to remove over 100 bottles of baby food after Johnson's allegation
 
 
 [4]
 § 3A1.1 provides that:
 If the defendant knew or should have known that a victim of the
 offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels.
 U.S.S.G. § 3A1.1.