OPINION OP THE COURT
 

 ROTH, Circuit Judge:
 

 This appeal requires us to determine the allowable units of prosecution for violations of 26 U.S.C. § 7201 (1988), a federal tax evasion statute, as well as several sentencing issues raised by appellant, Dr. William Pollen. Pollen appeals from the sentences imposed by the district court after his plea of guilty to four counts of tax evasion.
 
 [1]
 
 He argues that these four counts are impermissibly multiplicitous and that as a consequence he has been subjected to multiple punishment for the same violations of section 7201, a result prohibited by the Double Jeopardy Clause of the Fifth Amendment. In addition, Pollen asserts that the district court erred in calculating the amount of tax evaded and in increasing his offense level by four points to reflect his role in the offense charged in Count Five, the sole count governed by the Sentencing Guidelines.
 
 [2]
 
 Finally, Pollen contends that, even assuming his other arguments fail, the district court abused its discretion in imposing concurrent sentences for his pre-Guidelines and Guidelines offenses.
 

 We find that the counts to which Pollen pleaded guilty charge allowable units of prosecution under section 7201 and so are not impermissibly multiplicitous. Thus Pollen has not been subjected to multiple punishment for the same offense in violation of the Double Jeopardy Clause. Further, the district court did not err in calculating the amount of tax evaded or in imposing concurrent sentences for Pollen’s pre-Guide-lines and Guidelines offenses. We agree, however, with Pollen’s contention that the district court committed plain error in increasing his offense level by four levels to reflect Pollen’s role in the offense charged in Count Five. Consequently, we will vacate the sentence imposed on that count and remand to the district court for further sentencing proceedings in light of this opinion.
 

 I.
 

 The guilty plea that comprises the basis of this appeal is not the first chapter in the saga of Pollen’s attempts to evade his obligation to pay personal income taxes to the United States government. In April of 1972 Pollen was indicted by a federal grand jury in the District of New Jersey on three counts of income tax evasion for the years 1965, 1966, and 1967. The charges stemmed from an Internal Revenue Service (“IRS”) investigation which revealed that between 1965 and 1967 Pollen deposited $650,000 in a South Amboy, New Jersey, bank without reporting any income relating to these deposits to the IRS.
 
 [3]
 

 Prior to his arraignment on these charges, Pollen fled. A bench warrant was issued for his arrest, and on May 6, 1972, Pollen was apprehended in Canada. In March of 1973, Pollen pled guilty to evading $146,987 in taxes due for the 1967 tax year. When he failed to appear for his scheduled sentencing on May 18 of that year, a bench warrant was once again is
 
 *81
 
 sued for his arrest. Pollen managed to evade custody until May 7, 1974, almost a year later. Once apprehended, he was given a five-year sentence, the statutory maximum penalty for tax evasion.
 

 Meanwhile, on May 12, 1972, in response to a petition filed by the IRS, the district court appointed a receiver for Pollen’s estate, with instructions to take custody of all property belonging to Pollen and his wife and to satisfy Pollen’s tax liens for calendar years 1965-67. Throughout the majority of the receiver’s tenure from 1972 through 1978, Pollen refused to cooperate with the receiver’s attempts to fulfill his court-imposed duty to satisfy Pollen’s existing tax liens. In fact, during that period Pollen had substantial assets concealed outside of the United States that he refused to disclose.
 
 [4]
 
 As a consequence of this behavior the district court entered an order of contempt against Pollen in January of 1974. This civil contempt was not purged until June of 1975.
 

 During his tenure, the receiver collected outstanding accounts receivable from Pollen’s medical practice, located and sold a number of Pollen’s real estate holdings, and located bank accounts and safety deposit boxes containing gold and silver bullion and currency in numerous locales, including New Jersey, Mexico, and the Bahamas. These efforts resulted in the collection of approximately $1,300,000; $662,744 of which was remitted to the IRS to fulfill Pollen’s tax obligations for 1965, 1966, and a portion of that due for 1967.
 
 [5]
 
 Pursuant to standard IRS procedure, each payment the receiver made on behalf of Pollen was applied to his total debt, including tax, interest, and penalty, for the earliest tax years with outstanding debts.
 

 After his release from prison in April of 1976, Pollen continued to evade payment of his taxes and conceal assets from the IRS. As a result, on March 26, 1986, the grand jury for the District of New Jersey returned a four-count indictment against Pollen, charging him with willfully attempting to evade and defeat the payment of a large part of his United States income taxes owed for the calendar years 1965 through 1967, 1972 through 1975, and 1980 through 1982, in an amount in excess of $640,000. Again Pollen fled before he could be taken into custody, and he remained a fugitive for over four years.
 

 Ultimately Pollen was apprehended on August 15, 1990, as the result of a successful surveillance operation of his home in Colonia, New Jersey. At the time of arrest, Pollen possessed an extensive collection of false identification, including social security cards, a number of United States and foreign passports, drivers licenses, and credit cards. He also possessed a hand-held computer that contained information, recorded in at least four distinct coding systems, detailing his elaborate international system for cqncealing assets from the IRS.
 

 The United States subsequently presented additional evidence to the grand jury, and an eight-count Superseding Indictment was filed on October 1, 1990. On May 3, 1991, Pollen entered a plea of guilty in the United States District Court for the District of New Jersey to Counts One, Two, Three, and Five of this Superseding Indictment. Each of these four counts charged Pollen with attempting to evade and defeat payment of his personal income taxes for the same group of seven years: 1967,1970, 1972 through 1975, and 1982. In return for Pollen’s guilty plea on these counts, the government moved to dismiss Counts Four, Six, Seven, and Eight of the Superseding Indictment and Count One of a related indictment, the only count of that indictment in which Pollen was named.
 

 Count One of the Superseding Indictment charged that on or about April 18, 1984, Pollen knowingly and willfully attempted to evade the payment of more
 
 *82
 
 than $400,000 in federal income taxes for the years 1967, 1970, 1972 through 1975, and 1982 by “placing part of his assets out of reach of the United States Government by causing approximately $690,000 in gold to be brought to the Swiss Bank Corporation, Toronto, Canada, with instructions to further transfer the gold to a nominee account” in Switzerland. When pleading guilty to this count Pollen admitted that he owned this gold, that at the time of the transfer he knew that he owed substantial taxes to the IRS, and that he made this transfer in an attempt to evade payment of these taxes. Supplemental Appendix (“S.A.”) at 017-018.
 

 Count Two charged that on or about June 12, 1984, Pollen attempted to evade taxes owed for the same seven tax years through transporting an additional $285,-000 to the Swiss Bank Corporation in Toronto, Canada, with instructions that it be transferred to the nominee account in Switzerland. In pleading guilty to this count Pollen admitted that he owned this gold and that he made the transfer for the purpose of evading taxes that he knew he owed to the IRS. S.A. at 018-019.
 

 Count Three charged that between October 5, 1981, and December 18, 1984, Pollen attempted to evade and defeat the payment of taxes due for the same seven years by engaging in a continuous scheme and course of conduct to conceal assets from the IRS. In pleading guilty to this count Pollen admitted that as part of this course of conduct he used currency, money orders, and cashiers checks to buy assets and pay expenditures and that he used nominees to conceal his expenditures.
 
 [6]
 
 Pollen also admitted that when he engaged in this course of conduct he knew that he owed the federal government substantial taxes and he conducted these transactions in this manner for the purpose of evading their payment. S.A. at 019-021.
 

 Finally, Count Five charged that on or about August 22, 1990, Pollen attempted to evade and defeat the payment of his taxes owed for the identical seven years through placing assets out of the reach of the United States “by maintaining more than $350,-000 in gold bars and coins, jewelry, and gems in safety deposit boxes at the First Union National Bank of North Carolina” under a fictitious name. When pleading guilty to this count Pollen admitted that he owned these assets and that he placed them in the safety deposit boxes specifically for the purpose of evading the payment of taxes that he knew he owed.
 
 [7]
 
 S.A. at 021-022.
 

 Prior to sentencing, Pollen objected to his presentence report’s calculation of the amount of tax that he owed and its recommended four-level Sentencing Guideline offense level increase for Count Five, intended to reflect his leadership role in that offense. Both parties presented evidence concerning the disputed sentencing issues at a three-day sentencing hearing held July 29-31, 1991. Evidence also was presented indicating that the IRS has not yet recovered all of Pollen’s secreted assets, partic
 
 *83
 
 ularly those hidden in other countries.
 
 [8]
 
 At the close of this hearing, the district court imposed a sentence of five years imprisonment for Count Five, the sole Guidelines count. This sentence was based on a Sentencing Guideline calculation of an adjusted offense level of 23 and a criminal history level of 3, which produced a guideline sentence range of 57-71 months.
 
 [9]
 
 On this count Pollen was also sentenced to a three-year term of supervised release, with special conditions including restrictions on international travel, the repayment of all taxes and the payment of interest, penalties, a fine of $75,000, and a special assessment of $50. The court imposed sentences of five years for each of Counts One, Two, and Three to run concurrently with each other and consecutively with the sentence imposed for Count Five. A special assessment of $50 was also imposed on Count Three.
 

 On August 12, 1991, Pollen filed a notice of appeal from this sentencing determination. We have jurisdiction over this appeal from a sentence imposed in a criminal case by virtue of 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) & (e). Our review of the district court’s application and interpretation of the Sentencing Guidelines is plenary.
 
 United States v. Murillo,
 
 933 F.2d 195, 197 (3d Cir.1991). Factual findings concerning sentencing issues are subject to clearly erroneous review, and if “a judicial finding involves mixed questions of law and fact, the standard and scope of review takes on greater scrutiny, approaching
 
 de novo
 
 review as the issue moves from one of strictly fact to one of strictly law.”
 
 Id.
 
 at 198.
 

 II.
 

 Pollen first contends that the four counts to which he pleaded guilty were impermissibly multiplicitous.
 
 [10]
 
 A multiplicitous indictment charges the same offense in two or more counts and may lead to multiple sentences for a single violation, a result prohibited by the Double Jeopardy Clause.
 
 See United States v. Stanfa,
 
 685 F.2d 85, 86-87 (3d Cir.1982). The interest protected by the Double Jeopardy Clause in this multiple punishment context is confined to “ensuring that the total punishment did not exceed that authorized by the legislature.”
 
 Jones v. Thomas,
 
 491 U.S. 376, 381, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989). According to Pollen, Counts One, Two, Three, and Five each charge the same offense: evasion of the payment of taxes for the identical group of seven years.
 
 [11]
 
 As a result, Pollen maintains, he has received multiple punishment for the same offense, in violation of the Double Jeopardy Clause.
 
 [12]
 

 
 *84
 
 In response, the government first argues that because Pollen did not enter either a conditional guilty plea or a plea of nolo contendere under Rule 11(a) of the Federal Rules of Criminal Procedure, he is barred from pressing a Double Jeopardy challenge to his sentences on appeal. By pleading guilty, in the government’s view, Pollen waived his right to appeal any alleged multiplicity of the sentences imposed. We disagree.
 

 The Supreme Court, addressing this question of whether a Double Jeopardy claim of multiple punishment is barred by a defendant’s guilty plea, has explained that
 

 [j]ust as the defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses
 
 concede that he has committed two separate crimes.
 

 United States v. Broce,
 
 488 U.S. 563, 570, 109 S.Ct. 757, 763, 102 L.Ed.2d 927 (1989) (emphasis added). Consequently an accused advised by competent counsel who enters a voluntary and intelligent guilty plea may not bring a collateral Double Jeopardy challenge to the sentences subsequently imposed.
 
 Id.
 
 at 574, 109 S.Ct. at 765. The Court noted, however, that there is an exception to this rule if the defendant’s claim of multiplicity can be proven by reference solely to the indictment and existing record.
 
 Id.
 
 at 574-76, 109 S.Ct. at 765-66.
 

 Broce
 
 thus establishes the principle that a defendant who pleads guilty to a criminal charge may subsequently assert a claim of multiple punishment in violation of the Double Jeopardy Clause “only if the violation is apparent on the face of the indictment or record.”
 
 Taylor v. Whitley,
 
 933 F.2d 325, 328 (5th Cir.1991) (collateral attack on a guilty plea).
 
 See also United States v. Makres,
 
 937 F.2d 1282, 1286 (7th Cir.1991) (same);
 
 United States v. Quinones,
 
 906 F.2d 924, 927 (2d Cir.1990) (explaining, in the context of a direct appeal from a guilty plea, that “the test that apparently emerges from
 
 Broce
 
 seems to turn on whether the claim of Double Jeopardy may be adjudicated on the face of the record or requires supplemental evidence”),
 
 cert. denied,
 
 — U.S.-, 111 S.Ct. 789, 112 L.Ed.2d 851 (1991);
 
 United States v. Montilla,
 
 870 F.2d 549, 552-53 (9th Cir. 1989) (applying principle of
 
 Broce
 
 in a direct constitutional challenge to a guilty plea). If an indictment does not raise Double Jeopardy concerns on its face, and the defendant who has pleaded guilty would only be able to demonstrate a Double Jeopardy violation through an evidentiary hearing, then such claim, whether brought by collateral attack or direct appeal, must be rejected.
 
 See Dermota v. United States,
 
 895 F.2d 1324, 1326 (11th Cir.) (collateral attack on guilty plea),
 
 cert. denied,
 
 — U.S. -, 111 S.Ct. 107, 112 L.Ed.2d 78 (1990);
 
 Montilla,
 
 870 F.2d at 552-53 (direct appeal from guilty plea).
 

 In this case, Pollen asserts that the defect in his indictment is apparent on its face and that the legality of his sentences can be determined from the existing record. We will, therefore, examine the record to determine if Counts One, Two, Three, and Five are impermissibly multi-plicitous, i.e., does Pollen’s indictment in fact charges the identical offense in several counts.
 

 Neither party disputes that it would have been proper to charge Pollen, in separate counts, with attempting to evade taxes for each of the seven years specified in his indictment.
 
 See, e.g., United States v. Minker,
 
 312 F.2d 632, 636 (3d Cir.1962),
 
 cert. denied,
 
 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 978 (1963). It is also permissible under section 7201 to charge tax evasion covering several years in a single count as a “course of conduct” in circumstances “where the underlying basis of the indictment is an allegedly consistent, long-term pattern of conduct directed at the evasion of taxes for these years.”
 
 United States v. Shorter,
 
 809 F.2d 54, 58 (D.C.Cir.),
 
 cert. denied,
 
 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987). Pollen’s indictment,
 
 *85
 
 however, raises a unique question: whether a defendant can be charged and punished separately for several distinct affirmative acts of evasion committed with regard to taxes owed for the identical set of years.
 

 To adjudge whether the counts of Pollen’s indictment properly charge separate offenses we must ascertain the allowable unit of prosecution under the relevant statutory provision, section 7201.
 
 See, e.g., United States v. Langford,
 
 946 F.2d 798, 802 (11th Cir.1991),
 
 cert. denied,
 
 — U.S. -, 112 S.Ct. 1562, 118 L.Ed.2d 209 (1992). We have explained that the basic inquiry in this process
 

 is whether proof of one offense charged requires an additional fact that proof of the other offense does not necessi-tate____ Also of central importance is whether the legislature intended to make separately punishable the different types of conduct referred to in the various counts.
 

 Stanfa,
 
 685 F.2d at 87 (quoting
 
 United States v. Carter,
 
 576 F.2d 1061, 1064 (3d Cir.1978)). In practice, the second inquiry is usually determinative of the multiplicity question.
 
 Id. Accord United States v. Cooper,
 
 966 F.2d 936, 942 (5th Cir.1992) (in determining the allowable unit of prosecution for a statutory provision, the “task is to discern Congress’ intent by looking first to the plain language of the statute and then to legislative history and the overall statutory scheme of which it is a part”). Indeed, the Supreme Court has emphasized that “[i]t is Congress, and not the prosecutor, which establishes and defines offenses.”
 
 Sanabria v. United States,
 
 437 U.S. 54, 69, 98 S.Ct. 2170, 2181, 57 L.Ed.2d 43 (1978). Whether “a particular course of conduct involves one or more distinct ‘offenses’ under the statute depends on this congressional choice.”
 
 [13]
 

 Id.
 
 at 70, 98 S.Ct. at 2182.
 

 In this case the offense charged is tax evasion, in violation of 26 U.S.C. § 7201. To identify the congressionally intended units of prosecution for this offense, we first look to the language of this statute.
 
 See Cooper,
 
 966 F.2d at 942;
 
 United States v. Song,
 
 934 F.2d 105, 108 (7th Cir.1991). If this language is ambiguous, we will look next to the provision’s legislative history.
 
 See Song,
 
 934 F.2d at 108. Finally, if the legislative history sheds no light on Congress’ intended units of prosecution, we will apply the rule of lenity.
 
 See United States v. Marino,
 
 682 F.2d 449, 455 (3d Cir.1982). Under this rule, when ambiguity in a criminal statute cannot be clarified by either its legislative history or inferences drawn from the overall statutory scheme, the ambiguity is resolved in favor of the defendant.
 
 Id.
 
 (citing
 
 Rewis v. United States,
 
 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971)).
 

 Section 7201 provides, in relevant part: Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall ... be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ... or imprisoned not more than five years, or both, together with the costs of prosecution.
 

 26 U.S.C. § 7201.
 

 In support of the contention that his indictment is multiplicitous, Pollen emphasizes the phrase “evade or defeat
 
 any tax
 
 imposed.” In his view, this language evidences the section’s focus on the evasion of a
 
 specific tax,
 
 rather than on the willful attempt or attempts to evade that tax. Simply put, according to Pollen, the allowable unit of prosecution is the tax year. It is irrelevant whether the government proves one or multiple attempts to evade: section 7201 is intended to punish the evasion of any tax, and the precise attempts made to evade the tax are irrelevant for the purposes of punishment. Through charging in distinct counts several specific acts of evasion of the taxes owed for an identical group of years, Pollen contends, the government has arbitrarily and imper-
 
 *86
 
 missibly splintered the crime of tax evasion into potentially innumerable offenses.
 

 We cannot agree that Congress intended section 7201’s phrase “any tax” to be elevated in importance above the rest of that provision. There is nothing in the language of this section to indicate as much. In fact, when considered in its entirety, the language of section 7201 is straightforward: it prohibits “willful attempts in any manner to evade or defeat any tax.” It proscribes “attempts” to evade or defeat any tax and thus speaks in terms of the act of evasion, as well as the taxes evaded.
 
 Cf. United States v. Coiro,
 
 922 F.2d 1008, 1014-15 (2d Cir.) (ascertaining the allowable unit of prosecution under 18 U.S.C. § 1510(a)),
 
 cert, denied,
 
 — U.S. -, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991). Indeed, an affirmative act of evasion is an element of a section 7201 violation.
 
 See Sansone v. United States,
 
 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965) (the elements of a section 7201 violation include willfulness, the existence of a tax deficiency, and an affirmative act constituting an evasion or attempted evasion of the tax). Thus the offense of tax evasion can be completed when a person willfully “attempts in any manner” to evade or defeat income tax.
 
 See United States v. McGill,
 
 964 F.2d 222, 230 (3d Cir.1992) (the offense of tax evasion “is complete when a single willful act of evasion has occurred”);
 
 United States v. Kirkman,
 
 755 F.Supp. 304, 306 (D.Idaho 1991) (concluding, for statute of limitations purposes, that tax evasion is not a continuing offense).
 
 See also Norwitt v. United States,
 
 195 F.2d 127, 133-34 (9th Cir.) (tax evasion is not a continuing offense),
 
 cert. denied,
 
 344 U.S. 817, 73 S.Ct. 11, 97 L.Ed. 635 (1952). The plain language of this section, therefore, evinces the congressional intent to allow distinct, significant, affirmative acts of tax evasion to constitute separate section 7201 offenses.
 
 [14]
 

 In this case, Pollen made several international transfers of hundreds of thousands of dollars and secreted equally valuable assets in the United States, in attempts to evade payment of his taxes owed for a total of seven tax years. During his guilty plea colloquy Pollen admitted that at the time of these actions he knew that he owed substantial taxes and willfully undertook these actions in order to avoid their payment. However, Pollen repeatedly emphasized that although he was aware that he owed substantial taxes at the time of this conduct, he did not know for which years he owed which portion of the taxes he was attempting to evade. Logically, then, on the facts of this case it is clear that Pollen attempted to evade all of the taxes he owed for the group of years in question through the several significant affirmative acts of evasion charged in the counts to which he pleaded guilty. Under these circumstances, where the acts of evasion charged in each count involve funds far greater than the taxes owed for any particular year, and, as Pollen himself indicated, each act was intended to evade payment of all taxes owed, not merely those owed for a particular year, we conclude that section 7201 permits a unit of prosecution based on separate significant acts of evasion. Each willful attempt to evade taxes that involves funds of an amount that cannot logically be broken down and classified as relating to a particular tax year is an allowable unit of prosecution under the plain language of this section and so can be separately charged as evasion of the taxes owed for a group of tax years. Pollen’s indictment, therefore, is not impermissibly multiplicitous, and his claim pressed under the Double Jeopardy Clause fails.
 
 [15]
 

 
 *87
 
 We agree with the government that the unit of prosecution we recognize in this opinion is particularly appropriate in a case charging tax evasion committed through the evasion of payment.
 
 [16]
 
 In cases charging evasion of the assessment of tax, the alleged fraudulent action of a defendant often directly affects assessment for a particular tax year.
 
 [17]
 
 Consequently, it is logical in that type of case to charge attempts to evade the assessment of taxes for distinct years in separate counts. Evasion of payment cases, however, stand in sharp contrast to evasion of assessment cases. A defendant attempting to evade payment of taxes may, as in this case, engage in transactions designed to conceal assets from the IRS in an attempt to evade the payment of taxes due for a number of years. As a result in evasion of payment cases it is logical to charge distinct, significant attempts to evade the payment of tax for the same group of tax years in separate counts.
 

 Finally, we emphasize that our holding is circumscribed by the facts of this case: that for taxes owed for the years 1967, 1970, 1972 through 1975, and 1982, Pollen attempted to evade payment in April 1984 by transferring gold through Canada to Switzerland (Count One); he attempted to evade payment in June 1984 by transporting an additional $285,000 through Canada to Switzerland (Count Two); he attempted to evade payment between October 5, 1981, and December 18, 1984, by using currency, money orders, and cashiers checks to buy assets and pay expenditures and by using nominees to conceal his expenditures (Count III); and he attempted to evade payment in August 1990 by placing gold bars, coins, jewelry, and gems in safety deposit boxes in North Carolina under a fictitious name.
 
 [18]
 
 The unit of prosecution which we have recognized does not encompass the charging of a number of separate acts of evasion of a single year’s taxes in distinct counts. We do not, therefore, need to reach the much more difficult question of whether the language of section 7201 would support the splintering of the offense of tax evasion into a number of attempts greater than the number of calendar years for which taxes were evaded.
 
 [19]
 

 III.
 

 Pollen next contends that the district court erred in calculating the sentence
 
 *88
 
 imposed for Count Five,
 
 [20]
 
 the only count governed by the United States Sentencing Guidelines. Chapter 3, Part B of the Sentencing Guidelines permits a sentencing court to adjust a defendant’s offense level in relation to the role that defendant played in committing the offense in order to reflect the defendant’s culpability.
 
 [21]
 

 See
 
 U.S.S.G. Ch. 3, Pt. (Introductory Commentary);
 
 United States v. Murillo,
 
 933 F.2d 195, 198 (3d Cir.1991). Section 3B1.1 instructs the court to increase the offense level if a defendant was an “organizer,” “leader,” “manager,” or “supervisor” in an offense.
 
 [22]
 
 In calculating Pollen’s Count Five sentence, the district court increased the offense level by four levels pursuant to section 3B1.l(a) to reflect what it deemed to be Pollen’s aggravating role in that offense. In doing so, the court explained that it found by a preponderance of the evidence that at least five individuals knew of Pollen’s attempted tax evasion, and that “the evidence clearly shows that these people would not have been where they were for the purpose of attempting to retrieve secreted items unless in fact they were, as the government contends, orchestrated by the defendant.”
 

 Relying on our decision in
 
 United States v. Murillo,
 
 933 F.2d 195 (3d Cir.1991), Pollen now argues that this four-level increase was in error: in making this offense-level adjustment the district court improperly considered all of his “relevant conduct,” as that phrase is defined by the Guidelines, rather than only conduct directly relating to the specific offense of conviction charged in Count Five.
 
 [23]
 
 Had the district court properly limited its section 3B1.1 inquiry to conduct relating to the offense charged in that count, Pollen maintains, the court could not have concluded that he orchestrated at least five participants in criminal activity in connection with that offense.
 

 Pollen, however, did not raise this objection to the calculation of his offense level at sentencing and therefore failed to preserve this issue properly for appeal. As a consequence, we review the matter only to assure that “plain error” was not committed.
 
 See, e.g.,
 
 Fed.R.Crim.P. 52(b);
 
 United States v. Gonzalez,
 
 918 F.2d 1129, 1138 (3d Cir.1990) (reviewing sentencing calculations for plain error),
 
 cert. denied,
 
 — U.S.-, 111 S.Ct. 1015, 112 L.Ed.2d 1097 (1991);
 
 United States v. Castro,
 
 776 F.2d 1118, 1128 (3d Cir.1985) (objection to jury instruc
 
 *89
 
 tion that is not preserved will be reviewed for plain error),
 
 cert. denied,
 
 475 U.S. 1029, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986). Under this standard, we are “concerned only with errors that seriously affect substantial rights or compromise the fairness of the proceedings.”
 
 United States v. Martinez-Zayas,
 
 857 F.2d 122, 134 (3d Cir. 1988).
 
 See also United States v. Schreiber,
 
 599 F.2d 534, 539 (3d Cir.) (Seitz, J. concurring) (explaining that “[t]he price an appellant pays for his failure to object is a heavier burden of persuasion. He must show that the error was plain”),
 
 cert. denied,
 
 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979).
 

 In
 
 Murillo
 
 we resolved this question of the proper scope of a defendant’s conduct to be considered in adjusting an offense level pursuant to Guideline section 3B1.1.
 
 [24]
 
 Though recognizing that generally under the Guidelines all “relevant conduct” should be considered in determining offense levels, we noted that the Background to section 1B1.3 explained that it established a rule for determining the range of conduct relevant to calculating offense levels only “in the absence of more explicit instructions in the context of a specific guideline.”
 
 Murillo,
 
 933 F.2d at 198. We concluded that Guideline section 3B1.1 contained a more explicit instruction and found that “the common sense reading of ‘the offense’ as used in § 3B1.1 is ‘the offense of conviction.’ ”
 
 Murillo,
 
 933 F.2d at 198-99. Consequently,
 
 Id.
 
 at 199-200.
 
 Murillo
 
 thus explicitly adjudged it inappropriate for a sentencing court to consider all of a defendant’s “relevant conduct” when following Guideline 3B1.1 to adjust an offense level to reflect a defendant’s role in the offense.
 

 Our review of Pollen’s presentence report and the transcript of his sentencing hearing reveals that Pollen is correct: neither the district court at sentencing nor that portion of the presentence report adopted by the court as portraying the' evidence relating to this decision analyzed Pollen’s alleged leadership role in relation to the specific offence charged in Count Five. Instead, the district court increased-Pollen’s offense level by four points pursuant to section 3Bl.l(a) as a consequence of what it deemed to be his leadership role without determining whether the individuals allegedly orchestrated by Pollen were in any way involved in that specific offense.
 

 In fact, the government now concedes both that
 
 Murillo
 
 governs this issue and that the district court did not conduct a specific analysis of Pollen’s alleged leadership role with regard to Count Five. Nevertheless, the government asserts that there are several factors to support a finding that this failure to comply with section 3Bl.l(a) does not rise to the level of plain error. First, in the government’s view, the miscalculation of Pollen’s offense level should be adjudged harmless, for although no specific analysis of the evidence was conducted, it was clear that the actions of at least two individuals, Valerie and Carlos Garrett, were orchestrated by Pollen in direct connection to the Count Five offense. Pursuant to 3Bl.l(c), therefore, a two level increase- in Pollen’s offense level would have been appropriate. Further, according to the government, the district court at sentencing intimated that it would have
 
 *90
 
 departed upward from a lower Guideline range to impose the same statutory maximum five-year sentence.
 

 Second, the government contends that the adjustment of Pollen’s offense level did not amount to a manifest miscarriage of justice, and so is not plain error, because just months after Pollen’s Count Five offense the Guidelines were amended to specify that all relevant conduct, and not merely conduct relating to the offense of conviction, should be considered in making this type of adjustment in offense level.
 

 We cannot agree. The district court clearly failed to examine the evidence concerning Pollen's leadership role specifically in connection with the offense charged in Count Five. Absent this appropriate analysis, we are unwilling to assume that the sentencing court would have found appropriate a two-level adjustment for Pollen’s role in the offense pursuant to section 3Bl.l(c). Furthermore, we decline to engage in the type of speculation urged by the government concerning whether the district court would have made an upward departure from a properly calculated Guideline sentence range.
 
 See
 
 18 U.S.C. § 3742(f)(1).
 
 [25]
 
 We are dealing here with an egregious case of tax evasion. However, speculation on our part as to whether the district court would determine that Pollen’s outrageous conduct warranted an upward departure is inappropriate in light of the fact that a sentencing court’s decision to depart or not from the Guidelines is inherently discretionary and is not subject to appellate review.
 
 See United States v. Colon,
 
 884 F.2d 1550, 1554-56 (2d Cir.),
 
 cert. denied,
 
 493 U.S. 998, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989);
 
 United States v. Denardi,
 
 892 F.2d 269, 272 (3d Cir.1989) (approving the
 
 Colon
 
 analysis). The improper four-level increase in Pollen’s offense level resulted in a Guideline sentence range of 57-71 months, rather than the 46-57 month range if a two level increase had been imposed under § 3B1.1(c) or the 37-46 month range if there had been no upward adjustment for a leadership role. Where, as here, there is such a discrepancy between the sentence imposed and the correct sentencing range that the district court may ultimately find, we will not assume that such an error was harmless.
 

 Finally, we also reject the government’s contention that the miscalculation did not amount to a manifest injustice. The fact that the Guidelines were later amended has no bearing on the calculation of Pollen’s Count Five sentence. If the Sentencing Guideline in effect at the time an offense is committed is more favorable to a defendant, it must be applied.
 
 See United States v. Chasmer,
 
 952 F.2d 50, 52 (3d Cir.1991),
 
 cert. denied,
 
 — U.S. -, 112 S.Ct. 1703, 118 L.Ed.2d 412 (1992). The district court’s improper calculation of Pollen’s offense level, resulting in a significantly higher Guideline sentencing range, certainly is an error that seriously affected Pollen’s substantial rights, and so amounts to plain error.
 
 Accord United States v. Plaza-Garcia,
 
 914 F.2d 345, 348 (1st Cir. 1990) (finding plain error where government conceded on appeal that Sentencing Guideline calculations were erroneous). Consequently, we will vacate Pollen’s sentence on Count Five, and remand to the district court for further sentencing proceedings in light of this decision and our opinion in
 
 Murillo.
 

 IV.
 

 Pollen’s contention that the district court clearly erred in concluding that he owed approximately $488,000 in taxes merits little discussion. According to Pollen, credible evidence presented at his sentencing hearing demonstrated that the IRS applied the receiver’s payments to reduce the total amount, including tax, penalty, and interest, owed for each year, rather than
 
 *91
 
 only each year’s actual tax liability.
 
 [26]
 
 Had these payments been allocated only to delinquent taxes, exclusive of penalties and interest, Pollen asserts that he would now owe slightly less than $100,000 in taxes. In Pollen’s view, because the Sentencing Guidelines only take into account the actual amount of tax owed, regardless of the interest and penalties also due to the IRS,
 
 see
 
 U.S.S.G. § 2T1.1 (Commentary, Application Note 2),
 
 [27]
 
 the district court’s failure to recalculate his taxes owed in this manner is clear error: in effect he has received a longer sentence as a consequence of the receiver’s failure to request that the IRS depart from its standard procedure for allocating tax payments.
 
 [28]
 

 We cannot adjudge the district court’s calculation of the tax owed is clearly erroneous. The Sentencing Guidelines provide that sentences imposed for violations of section 7201 are to be based on “the total amount of tax that the taxpayer evaded or
 
 attempted to
 
 evade.” U.S.S.G. § 2T1.1.(a) (emphasis added). A preponderance of the evidence presented at the sentencing hearing demonstrated that Pollen attempted to evade every penny of the taxes he owed.
 

 Consequently, the district court would not have committed clear error even if it had sentenced Pollen based on the full tax debt he attempted to evade, without any credit for the receiver’s payments to the IRS. It is thus not clearly erroneous for the district court to refuse to accept Pollen’s calculation of the amount of taxes owed, a calculation that assumes that the IRS should have allocated the payments made by the receiver in a manner more favorable to Pollen.
 
 [29]
 

 V.
 

 Finally, Pollen argues that by imposing consecutive sentences for his pre-Guide-lines and Guidelines counts, the district court abused its discretion by double-counting all of the taxes he owed for the tax years in question. Emphasizing the fact that the statutory maximum penalty for a violation of 26 U.S.C. § 7201 is five years (60 months), Pollen asserts that, even assuming that the calculation of a sentence range of 57-71 months is correct, if all of the counts charged had been governed by the Guidelines, a consecutive sentence of at most eleven months would have been permissible.
 
 [30]
 
 In Pollen’s view, the district
 
 *92
 
 court abused its discretion through not imposing a consecutive sentence of a comparable length for his pre-Guidelines counts.
 

 It is well settled that, with regard to pre-Guideline counts, “the district court has virtually unfettered discretion in imposing a sentence if it falls within the statutory limits.”
 
 United States v. Matthews,
 
 773 F.2d 48, 52 (3d Cir.1985). In keeping with this discretion, our review of such a sentence is extremely circumscribed: if the sentence falls within the statutory maximum it is not reviewable on appeal unless there is a showing of illegality or abuse of discretion.
 
 United States v. Fischbach & Moore, Inc.,
 
 750 F.2d 1183, 1188 (3d Cir. 1984),
 
 cert. denied,
 
 470 U.S. 1029, 105 S.Ct. 1397, 84 L.Ed.2d 785 (1985).
 

 With regard to offenses committed before the effective date of the Sentencing Guidelines but sentenced after that date, we have stated that “the preexisting law will apply to all substantive matters including the imposable sentence.”
 
 United States v. Sussman,
 
 900 F.2d 22, 24 (3d Cir.1990) (quoting S.Rep. No. 225, 98th Cong., 2d Sess. (1983),
 
 reprinted in
 
 1984 U.S.C.C.A.N. 3182, 3372). Further, the fact that a defendant is also convicted of Guidelines offenses does not affect a sentencing court’s discretion in sentencing on the pre-Guidelines counts.
 
 Accord United States v. Lincoln,
 
 925 F.2d 255, 257 (8th Cir.) (“it is not an abuse of discretion to impose consecutive sentences when a defendant stands convicted of related preGuidelines and Guidelines offenses — even if the Guidelines would mandate concurrent sentences if both offenses were subject to them”),
 
 cert. denied,
 
 — U.S. -, 111 S.Ct. 2838, 115 L.Ed.2d 1006 (1991);
 
 United States v. Watford,
 
 894 F.2d 665 (4th Cir.1990) (same);
 
 United States v. Garcia,
 
 903 F.2d 1022 (5th Cir.) (same),
 
 cert. denied,
 
 — U.S. -, 111 S.Ct. 364, 112 L.Ed.2d 327 (1990). Thus Pollen’s assertion that his one Guideline count of tax evasion has some limiting effect on the district court’s discretion to impose consecutive sentences for his pre-Guideline counts fails.
 

 VI.
 

 For the foregoing reasons, we will vacate the judgment with respect to Count Five and remand to the district court for further sentencing proceedings in light of this opinion. The district court’s sentencing determinations will be affirmed in all other respects.
 

 [1]
 

 . Specifically, Pollen pleaded guilty to Counts One, Two, Three, and Five of his Superseding Indictment.
 

 [2]
 

 . Count Five charged an offense which occurred after November 1, 1987, the effective date of the Sentencing Reform Act of 1984, and so required that a sentence be imposed under the United States Sentencing Guidelines. ("U.S.S.G.”). Counts One, Two, and Three charged offenses occurring prior to that date.
 

 [3]
 

 . The IRS learned from an informant that the unreported income was eventually placed in accounts in Switzerland. According to the informant, on one occasion Pollen’s first wife wrapped $180,000 in currency to her midsection, pretended she was pregnant, and slipped past Customs Officials to enter Switzerland.
 

 [4]
 

 . For example, at some point during 1973, the receiver learned that Pollen had stored gold bullion in safety deposit boxes in Mexico. Before the receiver could retrieve these assets, Pollen sent an accomplice to move the gold, and it was never recovered by the receiver.
 

 [5]
 

 . The balance was disbursed to other creditors and applied to the receiver’s fees.
 

 [6]
 

 . For example, evidence was presented at the sentencing hearing that during the latter part of 1981, Pollen used cash to pay for over $30,000 worth of swimming pool repairs and landscaping work performed at his residence in Colonia, New Jersey. In December of 1982, Pollen bought a 1983 Lincoln Town Car for $20,346 using a combination of $3,000 in cash, six cashier's checks of $2,000 each, and another check issued by á nominee. In January of 1984, Pollen purchased a 1971 Rolls Royce for $11,800, using both cash and payments from a nominee. Pollen also gave one of his accomplices $7,500 in cash to pay for Pollen’s daughter’s private school expenses. Between May of 1984 and May of 1985, Pollen made cash payments of $17,200 for rent on a home in Palm City, Florida. Also during this period, Pollen paid a travel agent in cash for trips to places such as Iceland, Luxembourg, London, Switzerland, Rome, Venice, Nice, Montserrat, and Saint Thomas.
 

 [7]
 

 . After Pollen’s arrest, two of his accomplices, Carlos and Valerie Garrett, attempted to gain access to these safe deposit boxes ahead of the government. The government, however, had already searched the boxes and confiscated their contents: gold bars and coins, including Mexican pesos, Canadian maple leaves, Kruger-rands, platinum, silver, diamonds, sapphires, rubies, pearls, watches and other jewelry valued at approximately $350,000. The-Garretts, charged in a related indictment, pled guilty to conspiring with Pollen.
 

 [8]
 

 . For example, at the time of his arrest, Pollen possessed four keys for safe deposit boxes in Switzerland. According to the entries in Pollen’s hand-held computer, these boxes contain over 3,000 ounces of gold, none of which has been recovered by the IRS.
 

 [9]
 

 . The court imposed the statutorily set maximum penalty of 60 months.
 

 [10]
 

 . The government asserts that because the district court imposed concurrent sentences on Counts One, Two and Three, we need not decide whether Count Three is multiplicitous of Counts One and Two. Under the concurrent sentence doctrine, we have discretion to decline to resolve legal issues affecting less than all counts in an indictment if at least one count can be upheld and the sentences imposed run concurrently.
 
 See United States v. American Investors of Pittsburgh, Inc.,
 
 879 F.2d 1087, 1100 (3d Cir.),
 
 cert. denied,
 
 493 U.S. 955, 110 S.Ct. 368, 107 L.Ed.2d 354 (1989). This doctrine is generally not invoked if it is possible that the defendant may suffer collateral consequences, such as impaired parole eligibility.
 
 Id.
 

 However, at oral argument Pollen’s counsel conceded that because the sentences imposed for Counts One, Two, and Three run concurrently, Pollen's Double Jeopardy argument does not apply to these counts. We will, therefore, consider only the question of whether the acts of evasion charged in these counts are multiplici-tous of the offense charged in Count Five, and not whether Counts One, Two and Three are themselves impermissibly multiplicitous.
 

 [11]
 

 . Counts One, Two, Three and Five each charged Pollen with evading taxes for the years 1967, 1970, 1972-75, and 1982.
 

 [12]
 

 . Pollen correctly acknowledges that as a consequence of his guilty plea, he cannot attack the validity of the indictment per se, but instead is limited to challenging the constitutionality of his sentences under the Double Jeopardy Clause.
 
 Cf. United States v. Bonavia,
 
 927 F.2d 565, 571 (11th Cir.1991) (defendant who fails to
 
 *84
 
 object to multiplicitous counts in indictment before trial is barred from challenging indictment on appeal);
 
 United States v. Mastrangelo,
 
 733 F.2d 793, 800 (11th Cir.1984) (same).
 

 [13]
 

 . In fact, "[fjew, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses.”
 
 Id.
 

 [14]
 

 . Further, nothing in section 7201’s legislative history requires us to conclude that Congress intended to limit this provision’s unit of prosecution to an individual tax year.
 
 See
 
 H.R.Rep. Nos. 1337 and 2543, 83rd Cong., 2nd Sess. (1954),
 
 reprinted in
 
 1954 U.S.C.C.A.N. 4137, 4572; 5280, 5343. Indeed, the scant legislative history of this provision simply does not address the question of its allowable unit of prosecution. Thus it provides no support for Pollen’s attempt to circumvent the language of section 7201.
 

 [15]
 

 . Because we conclude that section 7201 is not ambiguous, we have no need to resort to the rule of lenity. That rule is applicable “only
 
 *87
 
 after it is determined that a criminal statute is ambiguous, not at the beginning of the process of construction ‘as an overriding consideration of being lenient to wrongdoers.’"
 
 United States v. Rodriguez,
 
 961 F.2d 1089, 1093-94 (3d Cir. 1992) (quoting
 
 Chapman v. United States,
 
 — U.S.-,-, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991)).
 

 [16]
 

 . The Supreme Court has described section 7201 as including “the offense of willfully attempting to evade or defeat the
 
 assessment
 
 of tax as well as the offense of willfully attempting to evade or defeat the
 
 payment
 
 of a tax.”
 
 Sansone v. United States,
 
 380 U.S. 343, 354, 85 S.Ct. 1004, 1011, 13 L.Ed.2d 882 (1965) (emphasis in original). This language has been interpreted as indicating that section 7201 proscribes the offense of tax evasion, which can be committed either by evading the assessment or evading the payment of taxes.
 
 See, e.g., McGill,
 
 964 F.2d at 230;
 
 United States v. Mal,
 
 942 F.2d 682, 686-87 (9th Cir.1991);
 
 United States v. Dunkel,
 
 900 F.2d 105, 107-08 (7th Cir. 1990).
 

 [17]
 

 . For example, attempts to evade assessment of tax often involve the filing of a false tax return or other false documents.
 

 [18]
 

 . As we have explained in footnote 10, under the concurrent sentence doctrine we in fact considered only whether the acts of evasion charged in Counts One, Two, and Three are multiplicitous of the offense charged in Count Five.
 

 [19]
 

 . We note also that our holding is not the equivalent of concluding that, as a consequence of section 7201’s phrase “in any manner,” each manner of tax evasion amounts to a separate unit of prosecution. This court has previously acknowledged the fact that the term "any,” when used in a statutory definition of a unit of prosecution, fails to define unambiguously the unit of prosecution in singular terms.
 
 See United States v. Marino,
 
 682 F.2d 449, 454 & n. 5 (3d Cir.1982).
 
 See also United States v. Coiro,
 
 922 F.2d 1008, 1014 (2d Cir.) ("the word "any” has typically been found ambiguous in connection with the allowable unit of prosecution”) (quotation omitted),
 
 cert. denied,
 
 — U.S. -, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991).
 

 [20]
 

 . Count Five charged Pollen with knowing and willful attempted tax evasion "by placing part of his assets out of the reach of the United States Government by maintaining more than $350,-000.00 in gold bars and coins, platinum, jewelry, and gems in safety deposit boxes at the First Union Bank in North Carolina in a fictitious name.”
 

 [21]
 

 . Unless otherwise indicated, all references to the Sentencing Guidelines in this opinion will be those in effect on August 22, 1990, the date of the offense charged in Count Five, as these are the Guidelines that must be applied.
 
 See United States v. Chasmer,
 
 952 F.2d 50, 52 (3d Cir.1991) (if Guidelines in effect on date of offense are more favorable to the defendant, they must be applied),
 
 cert. denied,
 
 — U.S. -, 112 S.Ct. 1703, 118 L.Ed.2d 412 (1992).
 

 [22]
 

 . Specifically, Guideline 3B1.1 states: Based on the defendant's role in the offense, increase the offense level as follows:
 

 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
 

 (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
 

 (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b) above, increase by 2 levels.
 

 U.S.S.G. § 3B1.1.
 

 [23]
 

 . Guideline section 1B1.3 defines relevant conduct as:
 

 (1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or ... that otherwise were in furtherance of that offense;
 

 (2) solely with respect to offenses of a character for which § 3D 1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction;
 

 U.S.S.G. § 1B1.3. Violations of 26 U.S.C. § 7201 are covered by Guideline § 2T1.1, and § 3D 1.2(d) requires grouping of these offenses.
 
 *89
 
 when determining role in the offense for all offenses committed before November 1, 1990, a court should look both to the acts or omissions of the defendant that satisfied the specific elements of the offense of conviction and to those that brought about the offense of conviction, i.e., all acts or omissions that were in furtherance of the offense of conviction.
 

 [24]
 

 .
 
 Murillo
 
 resolved this issue with regard to offenses committed prior to November 1, 1990. Effective as of that date the Sentencing Commission amended the Guidelines to specify that the determination of the defendant’s role in the offense is to be made on the basis of all relevant conduct "and not solely on the basis of elements and acts cited in the count of conviction." U.S.S.G. Ch. 3, Pt. (Introductory Commentary).
 
 See also Murillo,
 
 933 F.2d at 198 n. 1. The parties agree that these' amendments do not apply to Pollen’s Guidelines offense.
 

 Although
 
 Murillo
 
 was decided on May 8, 1991, approximately three months prior to Pollen’s sentencing hearing, neither the parties nor the district court appeared at that time to have been aware of its holding.
 

 [25]
 

 . This section provides:
 

 If the court of appeals determines that the sentence—
 

 (1) was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate.
 

 18 U.S.C. § 3742(f)(1).
 

 [26]
 

 . The IRS followed its standard procedure of applying payments against the total amount due from the taxpayer, including tax, interest, and penalty, year by year, beginning with the earliest year for which an amount is owed.
 

 [27]
 

 . Guideline 2T4.1, the Tax Table, provides that a defendant owing more than $70,000 but less than $120,000 in tax is to receive an offense level of 12. A defendant owing more than $350,000 but less than $500,000 is to receive an offense level of 15.
 

 [28]
 

 . We do not reach Pollen’s additional arguments that the district court’s decision to adopt the government’s calculation of the amount of taxes owed was clearly erroneous because the IRS failed to assign a basis figure to certain properties sold by the receiver, and because taxes due for 1983, charged in Count Four of the indictment and later dismissed, were improperly included in the total figure. Even assuming that these decisions were in error, they would be harmless. The total amount disputed by Pollen in this regard is $89,725.50, while an offense level of 15 is appropriate if the amount of tax evaded is more than $350,000 but less than $500,000. The amount of tax evaded by Pollen would nevertheless fall within this range even if the $89,725.50 at issue in these arguments is subtracted from the total amount found by the district court.
 

 [29]
 

 . We pause to accept the Sentencing Commission’s longstanding invitation to express our view on the efficacy and propriety of particular Guidelines.
 
 See, e.g., United States v. Parson,
 
 955 F.2d 858, 874 (3d Cir.1992). Guideline section 2T1.1, Application Note 2, provides that for the purposes of imposing sentence for violations of section 7201, the tax loss considered cannot include interest or penalties.
 
 See
 
 U.S.S.G. § 2T1.1. While such a limitation may be appropriate in an evasion of assessment case, it is not always so when imposing sentence for tax evasion committed through the evasion of payment.
 

 Pollen’s actions aptly illustrate this point: his repeated attempts to conceal assets were intended to evade the payment of his total debt of over $3,000,000. The Guidelines’ requirement that his sentence be calculated based on only his evasion of the $488,000 in raw taxes owed, and not also on his evasion of the payment of interest and penalties, fails to reflect accurately the criminal behavior involved in this type of evasion of payment of taxes offense.
 

 [30]
 

 . In relevant part, Guideline section 5G1.2 states:
 

 
 *92
 

 le)
 
 If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law.
 

 (d) If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects sentences on all counts shall run concurrently, except to the extent otherwise required by law____
 

 U.S.S.G. § 5G1.2.